UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIM JEFFRIES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16 CV 18 JMB |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# **MEMORANDUM AND ORDER**[2]

Kim Jeffries ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Defendant"), denying Plaintiff's application for disability benefits. Plaintiff argues that, in assessing her residual functional capacity, the Administrative Law Judge did not properly account for the days that Plaintiff would allegedly miss work due to doctor's appointments. Because the ALJ's decision is supported by substantial evidence, this Court **AFFIRMS**. See 42 U.S.C. § 405(g).

---

[1] This case is before the undersigned with the consent of the parties. See 28 U.S.C. § 636(c).

[2] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Introduction

### A. Background Medical Information

Plaintiff is a 59 year-old woman who initially alleged disability due to anxiety, crying spells, left knee surgery, and hearing voices. (Tr. 90) Plaintiff alleged that her impairments left her unable to work since April 1, 2008. (Id.) At the administrative hearing in this matter, Plaintiff testified that she also suffered from back and hip pain prior to March 30, 2011, her date of last insured, and that she could only sit for 10-15 minutes, but also admitted that this limitation was mostly due to "nerves" and that she was not having a lot of pain in 2011. (Tr. 48) Plaintiff also testified to pain resulting from carpal tunnel syndrome, mostly in her right hand, which limited her to carrying 3-4 pounds with that hand, caused her to drop things, and limited her ability to do tasks such as buttoning shirts, using a key, and handling money. (Tr. 52, 42)

As to her mental impairments, Plaintiff reported that her bipolar disorder caused issues with memory, concentration, completing tasks and understanding. (Tr. 271) For example, Plaintiff alleged that she "forget[s] directions," and has to "recheck" instructions. (Id.) Plaintiff also testified that she was less sociable than previously, and she was hearing voices once or twice a week. Paranoia and inability to make decisions were other reported symptoms. (Tr. 44-46)

The medical evidence related to her physical impairments shows Plaintiff has a history of wrist issues, but the evidence is mixed with regard to her back and hip pain. As to her wrist, Plaintiff has had multiple carpal tunnel surgeries, and an exam in August, 2009, noted decreased strength in the right hand, and severe thenar muscle wasting. (Tr. 376, 379) Plaintiff was diagnosed with right ulnar nerve damage with a history of carpal tunnel release surgery. (Id.)

As to her back and hip pain, a CT scan in July of 2011 revealed grade 1 spondylolisthesis with spondylolysis at L4-5.[3] On the other hand, an August 2009 consultative examination had mostly normal findings. (See Tr. 376) (finding no tenderness or spasm; normal gait and station, with no assistive device; full range of motion of the spine, and all extremities; toe and heel walk without difficulty and squatted to the floor and recovered without complaint; normal muscle strength in the lower extremities; reflexes and sensory were normal)

With regard to Plaintiff's mental impairments, the medical evidence shows a long history of treatment for mental health impairments, but it also shows that Plaintiff generally responded well to treatment and medication, and that periods of more severe symptoms coincided with temporary situational stressors. Plaintiff's mental health treatment records date from June of 2007, when she was treated at Psych Care Consultant. (Tr. 319-22) Plaintiff was diagnosed with major depressive disorder, bipolar disorder, and polysubstance abuse. At that time, Plaintiff alleged symptoms such as racing thoughts, anxiety, mood swings, depression, hallucinations, and difficulty interacting with others. (Tr. 319)

At the same time, however, treatment notes also indicate that Plaintiff was generally alert and cooperative, as well as well groomed. (Id.) Plaintiff demonstrated logical thoughts, with intact insight and judgment. These treatment notes did not appear to document significant mental impairments, but noted problems dealing with temporary stressors, such as a jail term of 120 days, or substance abuse relapses. The treatment notes in the years prior to Plaintiff's date last insured indicate that Plaintiff was doing well and that her medications were helping. (See, e.g., Tr. 416)

---

[3] Although this diagnostic evidence is dated approximately four months after Plaintiff's date last insured, the ALJ found that it was "reasonable to conclude that this condition could have existed and caused the claimant pain prior to her date last insured." (Tr. 18)

### B. **Procedural History**

As a result of Plaintiff's physical and mental health issues, Plaintiff applied for Title II disability benefits on January 13, 2012. Plaintiff's alleged onset date is April 1, 2008, and her date last insured is March 30, 2011. Plaintiff's claim was initially denied on May 14, 2012. Plaintiff requested a hearing before an administrative law judge ("ALJ"), and the ALJ held a hearing on May 28, 2014, at which Plaintiff testified, with counsel present. A vocational expert ("VE") testified regarding Plaintiff's past work, and the availability of work for someone with Plaintiff's age, education, work experience, and functional limitations. (Tr. 35-78)

In a decision dated June 18, 2014, the ALJ found Plaintiff not disabled. (Tr. 12-23) In arriving at this decision, the ALJ followed the familiar five-step process laid out in the Commissioner's regulations. At step one, the ALJ found Plaintiff did not engage in substantial gainful activity between the time of her alleged onset date and her date last insured. (Tr. 14) At step two, the ALJ found that Plaintiff suffered from the severe impairments of "grade 1 spondylolisthesis with spondylolysis at L4-5, right carpal tunnel syndrome, major depressive disorder, and bipolar disorder with psychotic features." (Tr. 14) At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[4] (Tr. 15-16)

Before proceeding to step four, the ALJ evaluated Plaintiff's residual functional capacity ("RFC") on the basis of the medical evidence of record, Plaintiff's hearing testimony, and the

---

[4] The ALJ found Plaintiff's history of left knee surgery to be a non-severe impairment, because the condition was "successfully managed" and "resulted in no more than minimal ongoing limitation." (Tr. 14) The ALJ also found Plaintiff's allegations of left hip pain to be non-severe, because the pain was not documented with objective medical evidence from the relevant timeframe. (Tr. 14-15) Plaintiff does not challenge herein the ALJ's non-severity findings, nor does she challenge the ALJ's conclusion that Plaintiff did not meet or equal any Listing.

-4-

relevant opinion evidence. In this regard, the ALJ found Plaintiff capable of performing light work, with the following restrictions:

> [Plaintiff] could perform occasional lifting up to 20 pounds and the frequent lifting/carrying up to 10 pounds. The claimant could perform standing or walking 6 hours out of an 8-hour workday. The claimant could perform work that does not require climbing on ropes, ladders, or scaffolds, and requires no more than occasional climbing on ramps and stairs. The claimant could perform occasional stooping, kneeling, crouching, or crawling. Fine fingering with the right dominant upper extremity was limited to occasional. The claimant was able to understand, remember, and carry out simple to moderately complex instructions consistent with semi-skilled work. The claimant could tolerate occasional contact with co-workers, supervisors, and the general public.

(Tr. 17) In making this finding, the ALJ evaluated Plaintiff's credibility and weighed the relevant opinion evidence.

As to Plaintiff's credibility, the ALJ found that Plaintiff's assertions of disabling functional limitations and pain were "not entirely credible." (Tr. 20) The ALJ based this adverse credibility determination on numerous factors. The ALJ found that the objective medical evidence and diagnostic testing was not consistent with Plaintiff's allegations of total disability. (Tr. 20) Additionally, the ALJ found Plaintiff's reported daily activities—including loading the dishwasher, sweeping, using a computer, driving, preparing simple meals, shopping in stores, and socializing with family and friends—were not consistent with allegations of total disability, and in fact required the same "physical and mental abilities" required to obtain and maintain employment. (Tr. 20-21) The ALJ also considered that Plaintiff's poor work history—which showed only sporadic working, and only one year since 2001 which approached substantial gainful employment. The ALJ concluded that Plaintiff's work history did "not bolster the credibility of [Plaintiff's] allegations." (Tr. 21) Finally, the ALJ noted that Plaintiff's medications caused no significant side effects, and indeed improved Plaintiff's "overall health, rather than contribute to her limitations." (Id.)

Regarding the medical opinion evidence, the ALJ gave "partial weight" to the opinion of Dr. Steven Comrov, M.D., a state agency medical consultant who opined that Plaintiff had no severe medical impairments. The ALJ agreed that Plaintiff's hip impairment was not a severe impairment, but thought Plaintiff had other physical impairments that were severe. In other words, the ALJ found Plaintiff to be more severely limited than did Dr. Comrov.

The ALJ gave "significant weight" to the opinion of Dr. Michael Stacy, Ph.D., who completed a Mental Functional Capacity Assessment, dated August 17, 2009. Dr. Stacy opined that Plaintiff had the ability to understand, remember, and carry out simple to moderately complex work instructions. Dr. Stacey further opined that Plaintiff could maintain adequate attendance and sustain an ordinary work routine without special supervision. Dr. Stacy also thought Plaintiff could interact adequately with peers and supervisors in a work setting that had limited demands of social interaction, and that Plaintiff could adapt to most changes in the work setting. The ALJ found Dr. Stacy's opinions "consistent with the overall evidence of record." (Tr. 19)

The ALJ gave little weight to the opinions of Dr. Barbara Markway, Ph.D., who completed a Mental Residual Functional Capacity Assessment, dated April 11, 2012. (Tr. 20) Dr. Markway thought Plaintiff was only capable of performing "unskilled work," but the ALJ chose to credit the earlier opinion by Dr. Stacy that Plaintiff could perform "semiskilled work." (Tr. 20) Furthermore, the ALJ noted that, although Dr. Markway thought Plaintiff had moderate limitations in interacting with the general public, the ALJ added a similar limitation regarding her interaction with coworkers and peers as well. (Tr. 20)

The ALJ also considered the opinion of Plaintiff's husband, which was "generally supportive" of Plaintiff's allegations. (Tr. 20) The ALJ gave only partial weight to this opinion

because it was dated over a year after Plaintiff's date last insured, because many of the statements in the third-party report were inconsistent with allegations of total disability, and because the allegations of total disability were inconsistent with the rest of the record as a whole.

Having determined Plaintiff's RFC on the basis of the medical evidence, Plaintiff's testimony, and the opinion evidence, the ALJ moved to step four of the analysis. At step four, the ALJ sought the testimony of a vocational expert ("VE"). The VE evaluated Plaintiff's vocational history and Plaintiff's testimony concerning her past work, and testified that—based on the RFC that the ALJ provided—Plaintiff could not return to her past work. The ALJ concurred, holding that Plaintiff could not return to her prior work because "even the claimant's least demanding past relevant job required her to perform work activities inconsistent with the [RFC] determined above." (Tr. 21)

Because Plaintiff was not capable of performing her last work, the ALJ moved to step five of the analysis. At step five, the ALJ proposed to the VE a series of hypothetical questions, some of which were consistent with the ALJ's RFC finding. Based upon these questions, the VE concluded that Plaintiff was capable of jobs such as laundry clerk, job tracer, and laboratory clerk. The ALJ concurred. (Tr. 22) Therefore, the ALJ found Plaintiff not disabled.

Plaintiff then sought review of the ALJ's decision with the Appeals Council. In an order dated November 2, 2015, the Appeals Council declined review. (Tr. 1-4) Having thus exhausted her administrative remedies, Plaintiff's case is properly before this Court. See 42 U.S.C. § 405(g).

## II. Standard of Review and Analytical Framework

"To be eligible for [disability] benefits, [Plaintiff] must prove that [she] is disabled …." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall

v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will be found to have a disability "only if [her] physical or mental impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423 (d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled. "During the process the ALJ must determine: '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'" Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends." Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)); see also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eight Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The

ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ;
2. Plaintiff's vocational factors;
3. The medical evidence from treating and consulting physicians;
4. Plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;
5. Any corroboration by third parties of Plaintiff's impairments;
6. The testimony of vocational experts when required, including any hypothetical questions setting forth Plaintiff's impairments.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outsize that zone simply because this Court might have reached a different conclusion had it been the original finder of fact. See also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome.").

**III.     Discussion of Issue Presented for Review**

As discussed above, Plaintiff's sole allegation of error is that the ALJ's RFC was deficient because it did not consider or address the issue of Plaintiff's purported absenteeism due to medical appointments.  (ECF No. 23 at 14-15)  Plaintiff argues that the ALJ should have included in the RFC a limitation that Plaintiff will have to miss work for doctor's visits.  Plaintiff then argues that this limitation—which Plaintiff calls an "incontrovertible fact"—would preclude Plaintiff from competitive employment.  Plaintiff therefore concludes that the ALJ's finding that sufficient jobs exist for someone with her qualifications and limitations is not supported by substantial evidence.

Defendant argues, in response, that the ALJ accounted for all of Plaintiff's "credible limitations," (ECF No. 30 at 5-6), and that absenteeism precluding competitive employment was not a credible limitation.  Defendant further argues that Plaintiff did not proffer any evidence that her need to visit medical professionals would cause her to miss whole days from work, and that, since it is Plaintiff's duty to prove RFC, Plaintiff's arguments should be rejected.

The Court agrees with Defendant, and finds that the ALJ did not err by failing to include references to absenteeism in Plaintiff's RFC.  First, the ALJ discounted Plaintiff's subjective complaints, and Plaintiff does not contest that determination here.  Moreover, the undersigned has reviewed the record and concludes that the substantial evidence supports the ALJ's credibility determination in this matter.  See Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016).  Second, it was Plaintiff's burden to prove RFC, not the ALJ's, see Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004), and Plaintiff did not offer any proof as to the number of days that she must miss due to her illnesses.

Although Plaintiff argues that it is "incontrovertible" that she will miss numerous days, the record does not support this argument and substantial evidence supports the ALJ's RFC determination. At best, Plaintiff proved how many times she has visited a doctor, but she did not show that each doctor's visit would result in her missing an entire day of work. As Defendant aptly notes, there is no reason to conclude that Plaintiff could not visit a doctor over her lunch hour, or before or after work; Plaintiff did not prove that it would take a material amount of time from her work day to visit the doctor.[5] Moreover, it appears to the Court that the majority of Plaintiff's doctor visits were normal and regularly-scheduled appointments to refill her prescriptions or for follow-up mental health treatment.[6]

In fact, there is substantial record evidence that squarely contradicts Plaintiff's argument regarding her perceived absenteeism problems. Both Drs. Stacy and Markway opined that Plaintiff could maintain regular attendance in her job. (Tr. 395-96) (Dr. Stacy finding that Plaintiff is not significantly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances); (Tr. 97) (Dr. Markway finding the same) Thus, even assuming that Plaintiff squarely raised an issue of absenteeism, substantial evidence in the record as a whole supports the ALJ's RFC assessment that does not include an absenteeism limitation.

Plaintiff contends that the Eighth Circuit's decision in <u>Baker v. Apfel</u>, 159 F.3d 1140 (8th Cir. 1998) supports her contention. <u>Baker</u>, however, is distinguishable. The plaintiff in <u>Baker</u>

---

[5] As Defendant points out, if this Court were to adopt Plaintiff's argument, then any plaintiff could establish disability simply by scheduling monthly doctor's appointments.

[6] Plaintiff's argument that she could not have "called in" refills for her pain medications, because they were narcotic medicines, is unavailing. For one thing, most of Plaintiff's refill appointments prior to her date last insured were for non-narcotic medications such as Xanax or Valium. Likewise, there is no reason in this record to conclude that Plaintiff would have missed an undue amount of work due to refilling even narcotic medications.

received nearly 60 Demerol injections over a nine-month period for migraine headaches. The injections left the plaintiff unable to drive or return to work afterwards. Furthermore, the doctor in that case specifically opined that the plaintiff would miss "a great deal of work" due to his migraines. Here, by contrast, two medical opinions specifically opined that Plaintiff would *not* miss any work, and the treatment that Plaintiff receives did not leave Plaintiff unable to drive or return to work. See Brock v. Astrue, 2008 WL 4104551 at *16 (W.D. Mo. Aug. 28, 2008) (holding that "the fact that a claimant must attend regular healthcare appointments does not necessarily indicate that she cannot work").

In her brief, Plaintiff also cites a portion of the hearing testimony in which the VE agrees with Plaintiff that a probationary employee cannot miss more than seven days of work in a year and still maintain employment. (See ECF No. 23 at 15) (quoting Tr. 76) This argument is not persuasive. First, even if Plaintiff is right at a theoretical level that an employee cannot miss more than seven days of work in a year, Plaintiff did not show that her doctor's appointments require her to miss seven entire days of work per year, as discussed above. Second, the Court agrees with Defendant that the VE here appears to be referring to unexcused absences from work. Plaintiff has not shown that her absence from work would be unplanned or unexcused, or that she could not use sick day benefits to schedule her doctor's appointments.

For the foregoing reasons, the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence.

**IV.  Conclusion**

Because the decision of the ALJ is supported by substantial evidence, and properly applies the governing law, this Court must affirm.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the administrative law judge in this matter is **AFFIRMED**.

A separate judgment shall be entered this day.

/s/ ***John M. Bodenhausen***
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of January, 2017